# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| HORACE MANN INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| ALOFT MEDIA, LLC; | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HORACE MANN INSURANCE COMPANY (hereinafter "Horace Mann" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant, ALOFT MEDIA, LLC (hereinafter "Aloft Media"). Horace Mann seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 declaring Horace Mann's website does not infringe U.S. Patent No. 10,372,793 ("the Asserted Patent" or "the '793 Patent") and/or that the Asserted Patent is invalid or unenforceable.

## THE PARTIES

1.      Plaintiff, Horace Mann Insurance Company, is an Illinois corporation with its principal place of business at 1 Horace Mann Plaza, Springfield, IL 62715.

2.      On information and belief, Defendant, Aloft Media, LLC, is a Texas limited liability company with an address at 211 West Tyler Street, Suite C-1, Longview, Texas 75601. According to the Texas Secretary of State's website, George A. Gordon is the registered agent and managing member of Aloft Media and is affiliated with the following address: 211 West Tyler Street, Suite C-1, Longview, Texas 75601.

1

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction over Horace Mann's request for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Further, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under Acts of Congress, including the Patent Act, 35 U.S.C. § 100 et. seq.

4. Venue is proper in the Central District of Illinois (hereinafter "this District"), because Plaintiff, Horace Mann Insurance Company, is headquartered in this District and because a substantial part of the events giving rise to this action occurred in this District.

5. Defendant has purposefully directed their patent enforcement efforts into this District. Aloft Media, Hadley Anne Inc., dba George Street Partners, the licensing agent acting on Aloft Media's behalf, Todd Schmidt, and George Andrew Gordon have sent a notice of patent infringement and follow-up licensing communications to Horace Mann, an Illinois corporation with its principal place of business in this District.

6. This Court has personal jurisdiction over Defendant because Aloft Media has continuous and systematic business contacts with the State of Illinois and this District through their business relationship with George Street Partners and Todd Schmidt.

7. On information and belief, Aloft Media exclusively utilizes George Street Partners, an Illinois corporation with an address at 1 Northfield Plaza, #300, Northfield, IL 60093, to manage its patent licensing activities. Accordingly, Illinois serves as the locus of Aloft Media's patent licensing operation, and this dispute arises directly from the enforcement and licensing efforts carried out through its Illinois-based agent.

8. Additionally, on information and belief, Aloft Media purposefully directed similar enforcement and licensing efforts at multiple entities within the State of Illinois and this District.

9. On information and belief, Defendant has negotiated licensing agreements with several entities in the State of Illinois and/or this District.

10. For these reasons, the Court's exercise of personal jurisdiction over Defendant, comports with due process and is proper under governing precedent.

## FACTUAL BACKGROUND

11. Horace Mann provides personal lines insurance coverage designed for educators throughout the United States.

12. Horace Mann utilizes https://www.horacemann.com, including all the web pages comprising the site (collectively, the "Accused Horace Mann Website"), to engage with customers and potential customers, as well as to market and sell its products and services. A print-out of the home page of the Accused Horace Mann Website is attached as **Exhibit 1**.

13. On July 25, 2025, Aloft Media sent a letter signed by Gordon, a claim chart, and a patent license agreement to Horace Mann (collectively, the "Notice Letter").

14. In the Notice Letter, Aloft Media: (i) claims to be the owner of the Asserted Patent, (ii) accuses Horace Mann of infringement of the Asserted Patent, (iii) identifies the Accused Horace Mann Website as an allegedly infringing instrumentality, (iv) provides a brief outline of alleged conduct attributable to Horace Mann and alleges that conduct to be infringing, (v) provides a claim chart asserting Aloft Media's theory of Horace Mann's alleged infringement of the Asserted Patent, and (vi) provides a patent license agreement to be executed by Horace Mann.

15. In the Notice Letter, Aloft Media specifically accuses the Accused Horace Mann Website of infringing claim 29 of the Asserted Patent and demands that Horace Mann execute a patent license agreement and make license payments to George Street Partners to resolve the matter.

16. On information and belief, Aloft Media is a non-practicing entity.

17. Non-practicing entities are colloquially referred to as "patent trolls" or "patent assertion entities."

18. On information and belief, Aloft Media does not practice the Asserted Patent, which is a method patent for use of drop-down menus on a website. Instead, Aloft Media monetizes its patents, including the Asserted Patent, via licensing.

19. Additionally, Aloft Media has an established and well-documented history of filing patent infringement lawsuits following communications of the type sent to Horace Mann. On information and belief, Aloft Media has filed at least (14) lawsuits alleging patent infringement in the Eastern District of Texas.

20. On information and belief, in each of these lawsuits, Aloft Media would first send letters asserting patent infringement and then, if it did not get what it demanded, initiate litigation.

21. In the Notice Letter, Aloft Media identifies George Street Partners as its "authorized licensing agent," identifies Todd Schmidt as "an agent of [George Street Partners]," and indicates that Schmidt "will be contacting [Horace Mann] within the next few days" to discuss a licensing agreement.

22. On information and belief, Aloft contracts with George Street Partners as the exclusive licensing agent for Aloft Media's patent portfolio. According to the Illinois Secretary of State Office, George Street Partners is an Illinois corporation with a registered address at 1 Northfield Plaza, #300, Northfield, Illinois 60093.

23. On information and belief, Aloft Media retained George Street Partners to act as its licensing representative, including in discussions with Horace Mann.

24. Since July 25, 2025, George Street Partners, through Schmidt, has sent email

4

communications to Horace Mann on Aloft Media's behalf, in follow up to the notice letter. Additionally, George Street Partners, through Schmidt, has a left voice mail message with Horace Mann regarding the same.

*The Asserted Patent*

25. U.S. Patent No. 10,372,793 ("the Asserted Patent" or "the '793 Patent"), is titled "Hyperlink with Graphical Cue" and issued from U.S. Application No. 16/243,044, which was filed on January 8, 2019. A true and correct copy of the Asserted Patent is attached hereto as **Exhibit 2**.

26. The Asserted Patent is directed to "computer-implemented techniques for improving the usefulness of hyperlinks in web pages." Asserted Patent, col. 1, ln 24-26.

27. In the Notice Letter, Aloft Media asserted Claim 29 of the Asserted Patent, which reads as follows:

> A method, comprising:
>
> providing content for a web page, the web page including web page code, a set of one or more representations of one or more menu items, and a set of one or more representations of one or more hyperlinks;
>
> causing, using the web page code of the web page, display of the set of one or more representations of one or more menu items of the web page, without any images being used in the display of the set of one or more representations of one or more menu items, and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including one or more textual representations of one or more hyperlinks;
>
> allowing, using the web page code of the web page, receipt of a first input that indicates a selection of one of the set of one or more representations of one or more menu items;
>
> causing, using the web page code of the web page and in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks;

allowing, using the web page code of the web page, receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks; and

causing, using the web page code of the web page and in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of another web page corresponding to the one of the set of one or more representations of one or more hyperlinks, the another web page including at least a portion of additional content simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items.

28. For purposes of the non-infringement analysis below, Claim 29 requires that "in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks", the web page "display … **at least a portion of additional content** simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items **while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items**." (emphasis added)

*The Accused Horace Mann Website*

29. The Accused Horace Mann Website comprises a collection of individual server-rendered pages. To facilitate user navigation across different pages, the Accused Horace Mann Website implements a nested menu system. When a user selects one of the top-level menu items, such as "Retirement," a drop-down menu is triggered, displaying additional choices related to the initial selection. Within this drop-down menu, the user can make a further selection, such as "Retirement Products," which directs the user to the corresponding web page, https://www.horacemann.com/retirement/retirement-products. **Exhibit 3**

30. As it relates to the Asserted Patent, selecting an item from Horace Mann's drop-down menus directs the user to an entirely new page where a new instance of the main menu is rendered. The original menu is not persistently displayed as the user navigates between web pages.

31. The public source code confirms that the website's navigation menu and header are included in the server-rendered HTML for each page and are reloaded as a new instance after every page navigation. **Exhibit 4**

32. Accordingly, the Accused Horace Mann Website does not infringe Claim 29 of the Asserted Patent either literally or under the doctrine of equivalents because it does not cause, "**display of another web page … including at least a portion of additional content** simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items **while the at least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items**." (emphasis added)

33. As informed by the specification of the Asserted Patent, this claim limitation requires new content to be displayed without navigating away from the first web page. Specifically, the "problem" identified by the Asserted Patent is that prior art website menus that utilize textual representations of hyperlinks do not make the destination of the hyperlink clear. Asserted Patent, col. 1, ln 49-57. Instead, the user must click on the hyperlink and navigate to a new web page and view it, which the Asserted Patent identifies as "tedious and time-consuming." Asserted Patent, col. 1, ln 57-65.

34. The solution proposed by the Asserted Patent is to identify the web page corresponding to the menu hyperlinks by displaying "at least a portion of additional content … so as to allow use of the set of one or more representations of one or more menu items while the at

least portion of additional content is simultaneously displayed with the set of one or more representations of one or more menu items."

35. Put another way, while remaining on the initial web page, a user can hover over or click on one of the hyperlinks in the drop-down menu which causes a visual preview of the hyperlink's destination to be displayed on the initial web page.

36. This concept is best illustrated by Fig. 5A of the Asserted Patent (below, emphasis added), which shows a web page 500 (outlined in **red**) comprising a first frame 502a (outlined in **blue**) and a second frame 502b (outlined in **green**).



37. The first frame 502a shows the top-level menu having a first set of hyperlink representations 504a/506a-h. A user can select (e.g., click on or hover over) one of the first set of hyperlink representations 504a/506a-h to access a drop-down menu having a second set of

8

hyperlink representations 508a-l. When the user selects one of the drop-down menu hyperlink representations 508a-l, the web browser automatically displays the destination of the selected hyperlink in the second frame 502b, which allows the user to preview the website destination before navigating away from the initial web page.

38. The Accused Horace Mann Website, however, does not display a preview to allow users to see a visual representation of the destination of the hyperlink before navigating away from the initial web page. Rather, the Accused Horace Mann Website utilizes the prior art menu systems wherein the drop-down menu includes textual representations of hyperlinks which do not display additional content when a user interacts with the menus.

39. For example, the prior art system of textual representations of hyperlinks is exemplified by U.S. Patent No. 7,032,183 ("the '183 Patent"), which was filed June 5, 2001, and was cited as prior art by the examiner during prosecution of the Asserted Patent. A true and correct copy of the '183 Patent is attached as **Exhibit 5**.

40. The '183 Patent teaches a method of navigating through a web site using a cascading menu of textual hyperlinks, wherein users navigate between the pages of the web site by selecting items from the cascading menu.

41. This concept is best illustrated by Fig. 7 of the '183 Patent below, which shows side-by-side windows 200 and 202 that display two web pages 204 and 206 respectively.



Fig.7.

42.     The first web page 204 is the home page of a news site and includes an interactive left-to-right cascading menu system including menu buttons 212 and sections 208 and 210 that cascade from the menu buttons 212. The sections 208 and 210 include hyperlinks which are used to navigate through the website. The '183 Patent identifies that the list of menu buttons 212 and their designated locations on the web page 204 preferably remain the same for all the web pages in the news web site. '183 Patent, col. 7, ln 26-45.

43.     As shown in the below screenshot, the Accused Horace Mann Website uses a similar menu system including a number of menu buttons.



44.     When a user selects one of the menu buttons, a drop-down menu including a number of hyperlinks is displayed. The user then selects one of the hyperlinks to navigate to a corresponding page of the Accused Horace Mann Website.

45.     Selecting a hyperlink from one of the drop-down menus does not, however, allow the user to see a preview of the destination web page. To identify the destination, the user must click on the hyperlink and navigate away from the initial web page to a new web page within the website.

46.     Additionally, the menu items are reloaded as part of each new web page's HTML. The Accused Horace Mann Website does not use any form of persistent client-side rendering, SPA routing, or AJAX-based dynamic content loading to display a preview of the destination web page before the user clicks on the hyperlink and navigates to the destination web page. Accordingly, the Accused Horace Mann Website does not display "another web page … including at least a portion of additional content simultaneously with the set of one or more representations of one or more menu items," and so, does not infringe Claim 29 of the Asserted Patent.

**COUNT I**
**DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,372,793**
**(28 U.S.C. § 2201)**

47.     Horace Mann repeats and incorporates by reference the allegations in the preceding

paragraphs as if fully set forth herein.

48. Horace Mann has not infringed and does not infringe any valid and enforceable claim of the Asserted Patent, whether literally or under the doctrine of equivalents.

49. Additionally, Horace Mann is not liable for any induced, contributory, divided, or any other indirect infringement of any valid and enforceable claim of the Asserted Patent.

50. Specifically, as explained in greater detail above, the Accused Horace Mann Website does not meet at least the claim limitation relating to displaying "at least a portion of additional content simultaneously with the set of one or more representations of one or more menu items."

51. In light of Aloft Media's Notice Letter and the Parties' licensing communications, there exists a substantial, real, and immediate controversy between Horace Mann and Aloft Media concerning Horace Mann's alleged infringement of the Asserted Patent.

52. Aloft Media's conduct toward Horace Mann and its initial demand letter (stating that its claim chart "is not exhaustive of your possible infringements, but rather they are exemplary of patent claims we believe may be presently infringed"), combined with Defendant's aggressive widespread licensing campaign and the history of Aloft Media and its affiliates filing patent infringement lawsuits, clearly demonstrates Aloft Media's intent to litigate the issue.

53. This controversy warrants the issuance of a declaratory judgment of non-infringement. A judicial declaration is necessary and appropriate so that Horace Mann may ascertain its rights and obligations regarding the Asserted Patent.

54. Horace Mann therefore respectfully seeks a judicial declaration that it does not directly, indirectly, or otherwise infringe any valid and enforceable claim of the Asserted Patent.

**COUNT II**
**DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,372,793**

55. Horace Mann repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

56. The Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 100 et seq., including without limitation 35 U.S.C. §§ 101, 102, 103, and other judicially-created bases for invalidity.

57. For example, to the extent that Aloft Media asserts that the Asserted Patent is so broad that the Accused Horace Mann Website infringes it, the Asserted Patent would be invalid under 35 U.S.C. § 102 as being anticipated by the '183 Patent or other prior art menu systems which disclose the nested menu system used by the Accused Horace Mann Website.

58. In light of Aloft Media's Notice Letter and the Parties' licensing communications, there exists a substantial, real, and immediate controversy between Horace Mann and Aloft Media concerning the validity Asserted Patent.

59. Aloft Media's conduct toward Horace Mann and its initial demand letter (stating that its claim chart "is not exhaustive of your possible infringements, but rather they are exemplary of patent claims we believe may be presently infringed"), combined with Defendant's aggressive widespread licensing campaign and the history of Aloft Media and its affiliates filing patent infringement lawsuits, clearly demonstrates Aloft Media's intent to litigate the issue.

60. This controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Horace Mann may ascertain its rights and obligations regarding the Asserted Patent.

61. Horace Mann therefore respectfully seeks a judicial declaration that the Asserted Patent is invalid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, HORACE MANN INSURANCE COMPANY, respectfully requests the following relief:

A. A declaration that Horace Mann has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,372,793, whether literally or under the doctrine of equivalents;

B. A declaration that each claim of U.S. Patent No. 10,372,793 is invalid;

C. A declaration that U.S. Patent No. 10,372,793 is unenforceable;

D. An order declaring that this is an exceptional case and awarding Horace Mann its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927; and

E. All such other and further relief, both at law and in equity, which the Court deems just and proper.

DATED: September 5, 2025

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

/s/ Jonathan L. Schwartz
Attorney for Horace Mann Insurance Company

Jonathan L. Schwartz (#6287338)
FREEMAN MATHIS & GARY LLP
33 N. Dearborn St., Suite 1430
Chicago, IL 60602
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com